

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| CONSTAN GERVAIS STREET CAR WASH, INC.,<br>  Plaintiff,<br><br>vs.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br>  Defendant. | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 3:24-1392-MGL<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTIONS TO STRIKE AND TO DISMISS**

**I.     INTRODUCTION**

Plaintiff Constan Gervais Street Car Wash, Inc. (Constan) filed this lawsuit against Defendant Auto-Owners Insurance Company (Auto-Owners) in the Richland County Court of Common Pleas. Auto-Owners subsequently removed the case to this Court, which has diversity jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Constan brings claims for breach of contract and bad faith refusal to pay benefits against Auto-Owners; and Auto-Owners brings an amended counterclaim for declaratory judgment it properly denied Constan's claim for insurance coverage. "[T]he core dispute between the parties in this matter has been whether Auto-Owners properly denied Constan's claim for coverage based on the 'vacancy' exclusion in the policy. Constan contends . . . the property was not 'vacant' within the meaning of the policy language at the time of the loss, and Auto-Owners contends . . . it was." Constan's Memo at 2.

Pending before the Court are Constan's two motions to strike and to dismiss. Having carefully considered the motions, the response, the reply, the record, and the applicable law, the Court will deny all the motions.

## II.     FACTUAL AND PROCEDURAL HISTORY

Because this Order is primarily concerned with Auto-Owners's amended counterclaim against Constan, as opposed to Constan's claims against Auto-Owners, the Court will look to the allegations set forth in Auto-Owners's amended counterclaim in drafting the factual history of this case.

"The subject property is located at 1950 Gervais Street, Columbia, South Carolina (The Property). The Property's structures were constructed in 1949 and designed as a car wash[,] which, at all times relevant, was owned by AcrePlus, LLC[,] who leased the property to Constan." Auto-Owners's Amended Counterclaim ¶ 68-69 (internal quotation marks omitted).

"Constan obtained Auto-Owners Tailored Protection Policy #944616-36033476-22 (hereinafter the Policy). The property designated on the Policy was a 'carwash' and 'awning.'" *Id.* ¶ 70 (citation omitted) (first set of internal quotation marks omitted).

Auto-Owners alleges, "[o]n October 22, 2022, Constan ceased all business operations on the Property due to its seizure by the City of Columbia. Utilities on the property at that time were either discontinued or diminished nearly entirely." *Id.* ¶ 71-72.

Auto-Owners further states, "[o]n or about October 27, 2022, AcrePlus, LLC leased a small portion of the property for part-time car detailing to a company called ATB Details." *Id.* ¶ 73. "Constan asserts[,] . . . between January 12, 2023, and January 18, 2023, the . . . building on the Property was vandalized by unknown individuals by damaging locks and removing the

salvageable materials." *Id.* ¶ 74. "A police report was filed with Columbia Police Department on January 18, 2023  On January 19, 2023, the claim was reported to Auto-Owners and an investigation ensued." *Id.* ¶ 75-76.

Auto-Owners claims, "[d]uring the investigation of the claim, Constan informed Auto-Owners . . . the contents were to be salvaged for an estimated $10,000 to $15,000. However, shortly thereafter, upon presentation of the sworn proof of loss[,] Constan claimed $813,342.94 for the loss." *Id.* ¶ 77-78.

"Subsequently, Auto-Owners concluded its investigation and issued a Coverage Position Letter denying Constan's claim and explaining the applicable policy provisions on August 29, 2023." *Id.* ¶ 83 (citation omitted).

Additionally, Auto-Owners alleges:

> The date of the alleged loss in this matter was January 12 through 18, 2023[;] Constan ceased operations sixty . . . days prior to the loss on October 22, 2022[;] Constan began salvaging the contents and equipment of the building in anticipation of the demolition planned following seizure of the property by the City of Columbia[;] Constan had no intention of ever conducting customary operations on the property following October 22, 2022, when it ceased operations[;] [and] [b]etween October 22, 2022, and January 12, 2023, Constan did not rent the property and no longer conducted customary operations.

*Id.* ¶ 86-90.

Auto-Owners claims

> Constan misrepresented one or more facts in the application of the policy to include, but not limited to:
>   a. The intent and use of the property;
>   b. The intent to rent the property;
>   c. Salvage condition of the property and/or contents;
>   d. The condemnation of the property and/or contents according to [Constan's] own statements to tribunals of this state;
>   e. Structural components of the property; and

    f. In other such further ways as the evidence may show.

*Id.* ¶ 91.

 Auto-Owners further maintains

> Constan misrepresented one or more facts in the investigation of the claim to include, but not limited to:
> a. The intent and use of the property;
> b. The value of the property;
> c. Vacancy;
> d. Salvage condition of the property and/or contents;
> e. The condemnation of the property and/or contents according to [Constan's] own statements to tribunals of this state;
> f. The condition of the property;
> g. Structural components of the property; and
> h. In other such further ways . . . the evidence may show.

*Id.* ¶ 92.

 As per the vacancy provisions of the policy:

> h. . . . . If the building where loss or damage occurs has been vacant for more than [sixty] consecutive days before that loss or damage occurs:
>
> (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
> (a) Vandalism,·
> (b) Sprinkler leakage, unless you have protected the system against freezing;
> (c) Building glass breakage;
> (d) Water damage;
> (e) Theft; or
> (f) Attempted theft.
>
> (2) With respect to Covered Causes of Loss other than those listed . . . above, we will reduce the amount we would otherwise pay for the loss or damage by [fifteen percent].

Policy at 11.

 According to Auto-Owners,

> Constan's insurable interest in the property ceased on October 22, 2022[;] The Property was vacant for sixty . . . consecutive days prior to the loss and meets the definition of the "vacancy"

4

> exclusion under the terms, conditions, and exclusions of the Policy[;]  The Policy is unambiguous, clear, and explicit and must be construed according to its terms giving policy language its plain and ordinary meaning[;] Auto-Owners has properly denied coverage based upon the [applicable] provisions[; and] Auto-Owners had and has a good faith basis for denial of the claim based on the policy provisions, the investigation, and [Constan's] acts or omissions.

*Id.* ¶ 93-97.

As is relevant here, after Auto-Owners filed its amended counterclaim, Constan filed its motions to strike and to dismiss, Auto-Owners filed its response in opposition to the motions, and Constan filed its reply in support of the motions.  The Court, having been briefed on the relevant issues, is prepared to adjudicate Constan's motions.

### III.     STANDARDS OF REVIEW

#### A.  *Motion to Strike*

Fed. R. Civ. P. 12(f) provides

> [t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The [C]ourt may act:
>
> (1)   on its own; or
>
> (2)   on motion made by a party either before responding to the pleading or, if a response is not allowed, within [twenty-one] days after being served with the pleading.

*Id*.  As another district court in the Fourth Circuit has recognized, "the standard by which courts judge Rule 12(f) motions imposes a sizable burden on the movant.  A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993).

### B. *Motion to Dismiss*

Inasmuch as the Court is presented with a motion to dismiss the defendant's/Auto-Owners's amended counterclaim, as opposed to the plaintiff's/Constan's complaint, for the sake of accuracy, the Court has substituted the following terms below: "counterclaim" replaces "complaint," "claimant," instead of "plaintiff," and "counter-defendant," as opposed to "defendant."

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a [counterclaim.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the Federal Rules of Civil Procedure require a counterclaim contain a short and plain statement of the claim showing the pleader is entitled to relief. *Id*. at 245.

Rule 8(a) does not require "detailed factual allegations," but rather "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)), to "give the [counter-defendant] fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)).

"Allegations have facial plausibility 'when the [claimant] pleads factual content that allows the [C]ourt to draw the reasonable inference . . . the [counter-defendant] is liable for the misconduct alleged.'" *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

In considering a motion to dismiss, a claimant's well-pled allegations are taken as true, and the counterclaim and all reasonable inferences are liberally construed in the claimant's favor. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court may consider only the facts alleged in the counterclaim, which may include any documents either attached to or incorporated in the counterclaim, and matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Although the Court must accept the claimant's factual allegations as true, any conclusory allegations, however, are unentitled to an assumption of truth, and even those allegations pled with factual support need to be accepted only to the extent "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

In sum, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption all the allegations in the counterclaim are true, even if doubtful in fact. *Twombly*, 550 U.S. 544, 555.

## IV.   DISCUSSION AND ANALYSIS

### A.   *Whether Auto-Owners's amended counterclaim should be struck as untimely*

The Court gave Auto-Owner's until August 27, 2024, to file its amended counterclaim. But, Auto-Owners waited until August 28, 2024, to do so.

Constan states the Court should strike the amended counterclaim as untimely. In response, "Counsel [for Auto-Owners) admits . . . a scrivener's error resulted in a day's delay of the filing of the Amended Counterclaim and . . . takes full and complete responsibility for the same, begging the Court's patience and understanding in that regard." Auto-Owners's Response at 3.

As per Fed. R. Civ. P. 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the [C]ourt may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

"[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated . . . the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick*

7

*Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citation omitted) (internal quotation marks omitted).

"Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear . . . 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id*. at 392 (footnotes omitted).

"Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances[.]" *Pioneer*, 507 U.S. 380 at 395. "These include . . . [1] the danger of prejudice . . . , [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

The Fourth Circuit has stressed "[t]he most important of the factors . . . for determining whether 'neglect' is 'excusable' is the reason for the [delay]." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996). "A district court's ruling on excusable neglect is reviewed for abuse of discretion." *United States v. Borromeo*, 945 F.2d 750, 754 (4th Cir. 1991).

Viewing the facts here under the factors set out in *Pioneer*, as to the prejudice element, Auto-Owners says Constan "does not argue and cannot show prejudice[.]" Constan's Response at 3. In reply, Constan states it "did not argue . . . it was prejudiced by the delay because that is not the inquiry." Constan's Reply at 1.

Constan is mistaken. As the *Pioneer* case states, "the danger of prejudice" is a proper consideration when deciding whether the movant is able to establish excusable neglect. *Pioneer*, 507 U.S. at 395. Thus, because Constan fails to assert it was prejudiced, this consideration weighs in favor of a finding of excusable neglect.

Concerning "the length of the delay and its potential impact on judicial proceedings," *id*., the one-day delay is de minimis. And absent is any impact on the judicial proceedings. Consequently, this factor also shows excusable neglect.

With a scrivener's error by Auto-Owners's counsel being the reason for the late filing, the Court can easily agree this factor tips the scales toward a determination of excusable neglect.

Constan neglects to suggest Auto-Owners acted in bad faith as to its delay in filing its amended counterclaim. Thus, inasmuch as all the *Pioneer* factors point the same way, the Court easily concludes Auto-Owners has satisfied the "excusable neglect" requirement set forth in Rule 6(b)(1)(B) for allowing it to file its amended counterclaim just one day late.

But, what about the motion requirement? Again, Rule 6(b)(1)(B) requires a "motion [be] made after the time has expired if the party failed to act because of excusable neglect." Auto-Owners failed to file such a motion.

Constan cites to *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) for the proposition "the only procedural avenue available to Auto-Owners to file its Amended Counterclaim was Rule 6(b)(1)(B), which requires a written motion demonstrating excusable neglect." Constan's Memo at 5. According to *Lujan*, "any postdeadline extension must be upon motion made, and is permissible only where the failure to meet the deadline was the result of excusable neglect." *Lujan*, 497 U.S. at 896.

But, although the *Lujan* court explained the dictates of Rule 6(b)(1)B), it also suggests the Court has some discretion in that regard: "Perhaps it is true . . . the District Court could have overcome all the obstacles we have described—apparent lack of a motion, of a showing, and of excusable neglect—to admit the affidavits at issue here. But the proposition . . . it was compelled to receive them—that it was an abuse of discretion to reject them—cannot be accepted." *Id*. at 898.

In other words, although the district court had the discretion to overlook a "lack of a motion, of a showing, and of excusable neglect[,]" *id*., the Supreme Court was unwilling to say it was an abuse of discretion if the district court instead required "a motion, . . . a showing, and . . . excusable neglect[,]" *id*. The Notes of Advisory Committee on Rules—1946 Amendment suggests the same thing: "Rule 6(b) is a rule of general application giving wide discretion to the [C]ourt to enlarge these time limits or revive them after they have expired[.]"

Some district courts in the Fourth Circuit have excused a strict adherence to the motion requirement. For instance, in *Roberts v. Berkle Welding & Fabrication, Inc*., No. 3:17-cv-315, 2017 WL 11576841 (E.D. Va. Dec. 12, 2017), the defendant's "arguments asking the Court to excuse its one-day delay in filing were made in its Response to [the plaintiff's] Motion for Entry of Default and not, as the federal and local rules require, in a separate motion requesting an extension of time to file. However, in the interests of justice and efficiency, the Court . . . construe[d] [the defendant's] Response to be a motion for an extension of time to file." *Id*. at *1 n.3.

And, in *King v. Washington Metro. Area Transit Auth.*, 14-cv-2752, 2016 WL 8716253 (D. Md. Feb. 26, 2016), the plaintiff filed a response in opposition to the defendant's motion for summary judgment, without filing a motion for an extension of time, and "provided no valid explanation for the late filing." *Id*.

The Court stated it "ordinarily would strike [the plaintiff's] Opposition on this basis. In this instance, however, . . . acceptance and consideration of the Opposition will not in any way prejudice [the defendant] on the Motion for Summary Judgment. Accordingly, the Court . . . den[ied] the [defendant's] Motion to Strike." *Id*. at *2.

The Court agrees with the reasoning and pragmatism of these courts' decisions. The reason for the motion requirement, the Court assumes, is so the movant can set forth its reason

for the delay of its filing. Inasmuch as Auto-Owners has given its reason in its response to Constan's motion to strike, the basis for the requirement is satisfied.

As per a strict construction of Rule 6(b)(1)(B), however, and allowing form to trump over substance, the Court could, at this late date, require Auto-Owners to file a Rule 6(b)(1)(B) motion. If it did so, and assuming the Court were presented with the arguments the parties have provided here, the Court would grant the motion. Such a filing, however, is unnecessary.

There are at least three additional problems with Constan's contention the Court should strike Auto-Owners's amended counterclaim because it is untimely. First, it is outside the custom and practice of this Court to dole out such draconian measures for such a small and excusable offense: a scrivener's error. Such a harsh and severe consequence to a one-day-late filing, for which Constan is unable to show any prejudice, is unwarranted here.

Second, even if the Court were to agree to strike the amended counterclaim, Auto-Owners's original counterclaim for declaratory judgment would still be in play. The amended counterclaim merely adds some additional allegations to Auto-Owners's declaratory judgment claim.

And third, assuming the Court agreed to strike Auto-Owners's amended counterclaim, Auto-Owners could request again to file its counterclaim. The Court generally grants such requests, even when it means it must amend the scheduling order.

For all these reasons, the Court will deny Constan's motion to strike Auto-Owners's amended counterclaim as untimely.

> **B.    Whether Auto-Owners's amended counterclaim should be struck as redundant to Constan's complaint and duplicative of its affirmative defenses**

Constan maintains Auto-Owners's amended counterclaim is redundant to its complaint inasmuch as a decision on the merits of its breach of contract and bad faith claims will necessarily render Auto-Owners's request for a declaratory judgment moot. Constan's Memo at

10. Constan also states "the Court should strike Auto-Owners's [a]mended [c]ounterclaim because it continues to duplicate its affirmative defenses and serves no substantive purpose in this litigation." *Id*. at 8.

According to Auto-Owners, however,

> there are at least three unique aspects of the [a]mended [c]ounterclaim readily and obviously ascertainable that thwart [Constan's] motion for dismissal. First, the [a]mended [c]ounterclaim asks for declaratory judgment related to the denial of the claim but also requests declarations related to the policy terms[.] Those declarations are not included in [Constan's] claim nor in any of the affirmative defenses. Next, the determination of [Constan's] insurable interest in the subject premises is not included in [Constan's] claim nor in any of the affirmative defenses[.] Finally, Auto-Owners seeks a declaration . . . the [Constan] made material misrepresentations or misleading information was presented to Auto-Owners in the presentation of the claim[.] This also, is fully factually plead within reason, and is not included in [Constan's] claims or the affirmative defenses.

Auto-Owners's Response at 9 (citations omitted) (emphases omitted).

The Court will first consider Constan's argument Auto-Owners's declaratory judgment amended counterclaim is redundant to Constan's breach of contract and bad faith claims. As aptly stated by the district court in *Biltmore Co. v. NU U, Inc.*, 15-cv-288, 2016 WL 7494474, at *2 (W.D.N.C. Dec. 30, 2016), "[p]ursuant to its discretion, a court may dismiss a declaratory counterclaim that is the 'mirror image' of the Complaint." And, the Court is aware courts have dismissed redundant, mirror image counterclaims. *See, e.g., XL Specialty Ins. Co. v. Truland*, 14-cv-1058, 2014 WL 7345200, at *2 (E.D. Va. Dec. 23, 2014) (dismissing an amended counterclaim because the affirmative defense and the counterclaim were repetitious).

But, in *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172 (6th Cir. 1942), "[t]he [plaintiff's] position [was] . . . the counterclaim presents nothing of substance not already submitted and in issue by the complaint and answer; . . . the counterclaim is entirely repetitious, and so redundant, and was rightly dismissed." In reversing the district court's dismissal of the defendant's counterclaim, however, the Sixth Circuit held "[it saw] no reason why [defendant's

12

Declaratory Judgment counterclaim] should not be available to [the defendant] as a counterclaim when circumstances would have permitted a separate suit." *Id*. at 175. A counterclaims for declaratory judgment may be proper if the relief sought "could have been made the basis of a separate suit in equity." *Id*. at 173.

In fact, insurance companies such as Auto-Owners often file declaratory judgment actions asking the Court to suit to determine whether the insured is entitled to any insurance coverage over its claim. *See, e.g. Integon Gen. Ins. Corp. v. C. Smith Enters., LLC*, 716 F. Supp.3d 408, 411 (D.S.C. 2023) ("[Plaintiff insurance company] brought this action seeking declaratory judgment . . . it owes [the insured] no obligation under the Policy[.]")

In addition, Fed. R. Civ. P. 57, provides, in relevant part, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Thus, it seems to follow Constan's claims fail to prevent Auto-Owners's declaratory action. *See Dominion*, 126 F.2d at 173 ("[T]he Declaratory Judgment Act furnishes an additional remedy which is not to be denied because of the pendency of another suit[.]").

Thus, although some courts have dismissed the defendant's counterclaims when it concluded they were redundant, "the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt . . . it will be rendered moot by the adjudication of the main action." 6 Fed. Prac. & Proc. Civ. § 1406 (3d ed.). The Court is unpersuaded Auto-Owners's declaratory action claim will be moot after a decision is made on Constan's claims.

This is primarily so because the Court agrees with the reasoning of the district court in *Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158 (E.D. Pa. 1978), which held "Defendant[ ] . . . ha[s] every right to seek a judgment declaring . . . [its] interpretation of the contract was the correct one. A ruling adverse to plaintiff on plaintiff's claim would merely result in a judgment . . . plaintiff was not entitled to the relief requested;

13

although it might logically follow from that judgment . . . defendant['s] interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one." *Id*. at 1162.

Auto-Owners is surely entitled to have the Court declare whether it's interpretation of its policy is correct if that is what it desires. Thus, the Court is unconvinced Auto-Owners's declaratory judgment amended counterclaim is redundant to Constan's breach of contract and bad faith claims.

The Court turns next to Constan's contention the Court should strike Auto-Owners's amended counterclaim because it is duplicative of its affirmative defenses and is without any purpose in this litigation. As another district court correctly observed, "[m]any district courts have dismissed counterclaims that are duplicative of affirmative defenses." *MST, LLC v. North Am. Land Trust*, 22-cv-874, 2023 WL 3571500, at *5 (D.S.C. May 19, 2023).

But, as the Court already stated, although Auto-Owners "ha[s] every right to seek a judgment declaring . . . [its] interpretation of the contract was the correct one[,] *Iron Mountain*, 457 F. Supp. at 1162, it would be unable to obtain that judgment if the Court struck its amended counterclaim because it is allegedly duplicative of its affirmative defenses. This fact alone shows the fallacy of the duplicative argument.

Accordingly, for these reasons, the Court will deny Constan's motion to strike Auto-Owners's amended counterclaim as redundant to Constan's complaint and duplicative of its affirmative defenses.

C. *Whether Auto-Owners's amended counterclaim should be dismissed for failure to state a claim*

Constan claims "Auto-Owners'[s] frequent use of . . . imprecise language, and its failure to support its allegations with actual facts, demonstrate[ ] the insufficiency of [its] allegations

14

under both Rules 8 and 9 of the Federal Rules of Civil Procedure." Constan's Memo at 8.  Thus, according to Constan, "[t]he [a]mended [c]ounterclaim should . . . be dismissed for failure to plead sufficient facts in support thereof." *Id*.

Auto-Owners, however, cites to the following facts it says it alleged in its amended counterclaim, which would make dismissal improper:

> the [a]mended [c]ounterclaim sets forth . . . Constan misrepresented facts or circumstances during the insurance claim investigation into vacancy, inter alia, 1) . . . Constan had no intention of conducting customary operations on the property following October 22, 2022, when it ceased operations; 2) Constan did not rent the property between October 22, 2022, the loss; 3) Constan's property was in the process of being salvaged in anticipation of demolition; 4) Constan's insurable interest ceased; and 5) the property was vacant for sixty . . . consecutive days.

Auto-Owners's Response at 4-5 (citations omitted) (emphasis omitted).  "These[,]" according to Auto-Owners, "are the specific facts that underly the vacancy insurance investigation and . . . form the factual basis for the material misrepresentation allegation regarding vacancy." *Id*. at 5.

Auto-Owners has the better argument.  The Court is unable to say, when Auto-Owners's amended counterclaim is construed in the light most favorable to it, Auto-Owners is unable to prove any set of facts supporting its claim and entitling it to relief.  *See Mylan Labs.,* 7 F.3d at 1134 ("In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain . . . the [counter claimant] can prove no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the [C]ourt should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the [counter claimant].").

The issue at this stage is whether Auto-Owners is entitled to offer evidence to support its claim.  *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 872 (4th Cir. 1989) ("The issue is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence

15

to support the claims." (citation omitted) (internal quotation marks omitted)).  The Court determines it is so entitled.

Why?  Because, when the allegations of the amended counterclaim are construed favorably to the pleader, Auto-Owners, the Court concludes Auto-Owners has provided sufficient allegations to allow the Court to draw the reasonable inference Constan is liable for the misconduct alleged.

As to Constan's Rule 9 arguments, the Fourth Circuit has long held "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) . . . the [counter defendant] has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) . . . [claimant] has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  The Court is of the opinion those two requirements are met here.

Consequently, for the reasons stated above, the Court will also deny Constan's motion to dismiss Auto-Owners's amended counterclaim.

\* \* \* \* \*

Given these determinations, it is unnecessary for the Court to discuss the parties' remaining arguments on whether to strike or dismiss Auto-Owners's amended counterclaim.  *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C. J., concurring in judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary not to decide more."); *see also Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

## VI. CONCLUSION

In light of the foregoing discussion and analysis, Constan's motions to strike and to dismiss are all **DENIED**.

**IT IS SO ORDERED**.

Signed this 31st day of July, 2025, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE